IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4-25CR-076-0 |
| JEREMY MCNUTT (01) | |

## INFORMATION

The United States Attorney charges:

At all times material to this information:

### Summary of the Scheme

1.      From in or about December 2021 through in or about October 2022, defendant **Jeremy McNutt**, along with others known and unknown, engaged in a conspiracy and a scheme to defraud using a cryptocurrency mining business called Geosyn. As part of the scheme, **Jeremy McNutt** and his coconspirators made material misrepresentations to induce individuals and entities to invest money and contribute cryptocurrency mining machines to Geosyn's mining pool.

### Background

2.      Bitcoin is a type of electronic currency that exists entirely on the internet and not in any physical form. Individuals can "mine" for bitcoin by contributing computing power to verify and record bitcoin transactions, and are rewarded by being given newly created bitcoin. Individuals can pool their miners to increase the overall computing power, with any bitcoin earned then being distributed based on a miner's contribution to the pool. Bitcoin

Information - Page 1

mining typically requires specialized computers, called "miners," and consumes a large amount of electricity.

3. Geosyn Mining, LLC and related Geosyn entities (collectively, "Geosyn") were registered in the state of Texas and had their principal place of business in the Northern District of Texas, with locations in Fort Worth and Springtown. Geosyn purported to allow clients to pool bitcoin mining machines and be paid out a percentage of the pool's earnings.

4. Defendant **Jeremy McNutt** resided in the Northern District of Texas and was a co-owner and the Chief Operating Officer of Geosyn.

5. Geosyn used the term "clients" to refer to individuals and entities who agreed to contribute bitcoin miners to Geosyn's mining pool. Although a client agreed with Geosyn to keep miners at Geosyn facilities and contribute to Geosyn's mining pool, clients retained ownership of their miners.

6. Clients could either send their own miners to Geosyn and pay a fixed setup fee per miner, or clients could have Geosyn purchase miners for them in exchange for a 13–15% procurement fee, which Geosyn represented would cover all costs associated with the acquisition, installation, and set up of the miners.

7. In exchange for Geosyn providing hosting and management services, clients agreed to pay Geosyn a monthly service fee in the form of a percentage of bitcoin earned. **McNutt** and his coconspirators told clients that Geosyn would charge electricity at cost-equivalent, meaning clients would pay their share of the total actual electricity cost of the mining pool.

Count One
Conspiracy to Commit Wire Fraud
(Violation of 18 U.S.C. § 371 (18 U.S.C. § 1343))

8. From in or about December 2021, through in or about October 2022, in the Northern District of Texas and elsewhere, defendant **Jeremy McNutt**, along with others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice and attempting to do so, caused to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

Purpose of the Conspiracy

9. The purpose of the conspiracy was to deceive current and potential clients and investors about the financial and material conditions of Geosyn, in order to (1) induce current clients not to withdraw from Geosyn, (2) induce potential clients to purchase machines through Geosyn, and (3) enrich **Jeremy McNutt** and his coconspirators.

Manner and Means of the Conspiracy and Scheme to Defraud

10. The manner and means by which **Jeremy McNutt** and his coconspirators sought to accomplish the purpose of the conspiracy included, among other things:

11. *Misrepresenting the actual cost of miners.* Although **Jeremy McNutt** and his coconspirators told potential clients that Geosyn would only charge 15% to acquire mining machines, at times Geosyn would lie to potential clients about the cost of the machines in

order to reap additional profits for themselves. For example, on or about March 31, 2022, Victim-1, a Geosyn client, paid approximately $386,500 ($7,730 each) for the purchase of 50 miners (specifically Whatsminer 30S (90th) miners). The same day, Geosyn paid a supplier approximately $272,500 ($5,250 per miner plus $200 shipping per miner) to purchase Victim-1's 50 miners. Geosyn retained approximately $114,000 or 29.5% of Victim-1's funds, far more than the 15% represented.

12.     *Falsified earnings reports and payments*. At least as early as June 2022, **Jeremy McNutt** and his coconspirators knew that Geosyn did not have the infrastructure to bring online the miners that clients had already purchased. To cover for this shortfall, one of **Jeremy McNutt's** coconspirators sent out materially false distribution reports that inflated the actual bitcoin mined by Geosyn's pool and depicted mining production and returns for clients whose miners were not purchased or were not actually being operated. In order to cover the differential and pay clients for bitcoin that had not actually been mined, **Jeremy McNutt** bought bitcoin and provided the bitcoin to a coconspirator, who transfer it to the clients without telling the clients that their miners were not actually purchased or operating. **Jeremy McNutt** and his coconspirators continued to solicit new clients, but instead of using these new clients' funds to purchase the clients' miners as agreed, **Jeremy McNutt** used the funds to pay off existing clients and pay for personal expenditures.

13.     *Misrepresenting that clients' miners had been purchased*. At least as early as August of 2022, **Jeremy McNutt** and his coconspirators began misrepresenting to clients that miners had been purchased with the clients' funds when, in fact, **Jeremy McNutt** and his

coconspirators never actually purchased some of the clients' miners. Instead, **Jeremy McNutt** and his coconspirators were misappropriating client's funds to cover other business expenses and to pay for personal expenses. For example, on or about September 28, 2022, **Jeremy McNutt** purchased multiple guns totaling approximately $7,140, and on or about June 11, 2022, **Jeremy McNutt** purchased two Rolex watches totaling approximately $6,495, all with client funds.

## Overt Acts

14.  In furtherance of the conspiracy and to effect its object, in or about September 2022, in the Northern District of Texas and elsewhere, **Jeremy McNutt** used interstate and foreign wires to send a coconspirator around $8,000 in bitcoin to cover client distributions. **Jeremy McNutt** knew that the bitcoin did not come from distributions, that some of the clients' machines had not been purchased, and other clients' machines were not operating, but still caused the payments to be made to the clients under the false pretense that they were distributions, in order to deceive the clients that their machines were operating and induce them to continue to invest in Geosyn.

All in violation of 18 U.S.C. § 371 (18 U.S.C. § 1343).

Forfeiture Notice
(18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p))

15.  Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p), upon conviction of any offense violating 18 U.S.C. §§ 1349 and/or 1343, the defendant, **Jeremy McNutt**, shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud and/or conspiracy.

16.  The government may seek a forfeiture money judgment.

17.  The government may seek substitute property as allowed by 21 U.S.C. § 853(p), which is applicable under 28 U.S.C. § 2461(c).

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

_/s/ Matthew Weybrecht_
MATTHEW WEYBRECHT
Assistant United States Attorney
State Bar of Texas No. 24102642
Telephone: 817-252-5200
Fax: 817-252-5455
matthew.weybrecht@usdoj.gov